UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ASHLEY PLACE ASSOCIATION, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-06-CV-999-XR** |
| | ) | |
| **ROBERT JAMES NICHOLSON,** | ) | |
| **SECRETARY OF VETERAN'S** | ) | |
| **AFFAIRS** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

On this date, the Court considered Defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted (Docket No. 3).  For the reasons discussed below, the Court finds that further briefing is necessary to resolve this motion. The Court ORDERS the parties to submit additional briefing on the following issues: (1) Plaintiff must allege the exact nature of its Little Tucker Act claim against Defendant;[1] (2) both parties must address choice-of-law issues related to Plaintiff's Little Tucker Act claim; (3) both parties must address whether the Bankruptcy Court retroactively validated the foreclosure sale that was conducted in violation of the automatic stay; (4) both parties must address whether the Rescission Document executed by the substitute trustee is void; (5) both parties must address whether this Court should issue an Order correcting the chain of title; and (6) both parties must address whether Washington Mutual's failure to comply with 38 C.F.R. § 36.4320 rendered the attempted conveyance a nullity.

_____

[1]Plaintiff can satisfy this requirement by filing an Amended Complaint.  *See infra.*

Both parties are ORDERED to file this briefing by **April 18, 2007**, and both parties may file a response by **April 30, 2007.**  The brief and the response are limited to fifteen pages in length.  No reply will be allowed.  Plaintiff is ORDERED to file an Amended Complaint on or before **April 11, 2007.**

Rule 12(b) of the Federal Rules of Civil Procedure states that if matters outside the pleading are presented to and not excluded by the court in considering a Rule 12(b)(6) motion, then "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." In deciding a Rule 12(b)(6) motion, the Court generally must limit its inquiry to facts stated in the Complaint, documents attached to or incorporated into the Complaint, matters of public record, and matters of which it may take judicial notice.  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).  The Court believes that resolution of the various legal issues discussed in this Order will require the Court to consider matters outside the pleading. Consequently, the Court opts to convert this motion to dismiss into a motion for summary judgment. *See Bolen v. Dengel*, 340 F.3d 300, 312 (5th Cir. 2003); *Burns v. Harris Cty. Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998).  In order to prevent unfair surprise, the parties are given notice that they may present summary judgment evidence in their briefing.

### I. Factual & Procedural Background

Plaintiff Ashley Place Association, Inc. ("Ashley Place"), a homeowner's association, has sued Robert James Nicholson, in his official capacity as Secretary of Veteran's Affairs ("VA"), to obtain compensatory damages for the alleged failure of the VA to pay assessed homeowner's fees against certain real property. Plaintiff asserts that the VA is record owner of the subject property and

now seeks compensatory damages in connection with the collection of the association fees.[2]

Plaintiff is an association of property owners that assesses property fees on lots within its subdivision. Plaintiff asserts that the subject property, 1041 Boxer Pass, Schertz, Texas, was assessed association fees while the VA was record owner of the subject property.[3]

William and Kathleen Semlinger purchased 1041 Boxer Pass on April 15, 1998, with a VA-guaranteed loan subject to a deed of trust.  The Semlingers ("Debtors") filed for Chapter 13 bankruptcy in the Western District of Texas, San Antonio Division, on May 31, 2004 (Bankr. No. 04-53177-RBK).  On or about October 26, 2005, Washington Mutual Bank, the holder and owner of the note and deed of trust on the subject property filed a "Motion for Relief from Stay of Action Against Property and waiver of Thirty Day Requirement" for the Debtors' failure to make note payments.  On or about April 26, 2006, Washington Mutual and the Debtors reached an agreement that allowed the Debtors to cure the mortgage delinquency and retain the subject real property by making monthly payments to Washington Mutual.[4]  The Court will take judicial notice of the April 26, 2006 Order. Although the April 26, 2006 Order stated that the automatic stay would be automatically lifted as to Washington Mutual in the event that the Debtors defaulted under the

---

[2]The Court notes that the VA is currently record owner of the subject property according to the website for the Office of Tavie Murphy, Tax Assessor-Collector, Guadalupe County Tax Office. *See* http://www.co.guadalupe.tx.us/Appraisal/PublicAccess/ (last visited April 2, 2007).

[3]It is unclear to the Court whether the association fees were incurred before or during the VA's alleged ownership of the subject property.  Apparently, those fees were levied against the subject property during the VA's alleged ownership.

[4]The Court questions how this agreement was reached considering the fact that Washington Mutual had already conducted a foreclosure sale of the subject property.  It appears that both Washington Mutual and the Debtors did not realize that a foreclosure sale had occurred on June 1, 2004, which was one day after the Debtors' filed for chapter 13 bankruptcy.

repayment agreement, there is no indication that Debtors have defaulted. On April 3, 2007, Countrywide Home Loans, Inc. ("Countrywide") filed a Notice with the Bankruptcy Court stating that it was assuming the Washington Mutual debt and future payments should be made to Countrywide. By its own terms, the April 26, 2006 Order did not retroactively validate the June 1, 2004 foreclosure sale.[5]

Unknown to VA (and apparently to Washington Mutual and the Debtors), Washington Mutual had conducted a foreclosure sale of the property in violation of the automatic stay. A substitute trustee's deed dated June 1, 2004 (the first Tuesday of the month) was filed in the real property records of Guadalupe County, Texas. According to Defendant, the foreclosure sale was not discovered until Plaintiff filed this lawsuit. As a result of this improper foreclosure, Washington Mutual issued a "Rescission of Substitute Trustee's Sale," which was apparently recorded in the real property records of Guadalupe County, Texas. The VA also alleges that it never accepted conveyance of the subject property because Washington Mutual never conveyed the property to VA in accordance with applicable federal statutes and regulations.

In its motion to dismiss, the VA argues that this Court lacks subject matter jurisdiction over this case because Plaintiffs failed to cite a valid jurisdictional statute in its Complaint. The VA notes that the jurisdictional statute cited in Plaintiff's Complaint, 28 U.S.C. § 1346(a)(1), relates only to civil actions against the United States for wrongfully assessed internal revenue taxes.

Alternatively, the VA argues that Plaintiff has failed to state a claim upon which relief may be granted. The VA notes that Plaintiff's liability theory is premised on the fact that VA was the

---

[5]The April 26, 2006 Order merely authorized a *future* foreclosure in the event that the Debtors' defaulted under the terms of the payment plan and Washington Mutual complied with the notice provisions of the Order.

record owner of the subject property at the time the association fees were assessed.  The VA attached a document to its motion to dismiss entitled "Rescission of Substitute Trustee's Deed" ("Rescission Document"), which was executed on December 8, 2006 by Charles Brown, the substitute trustee.[6] That Rescission Document stated that the Substitute Trustee's Deed dated June 1, 2004 and recorded in the real property records of Guadalupe County, Texas "was void and of no effect for the reason that the debtors filed Bankruptcy . . . prior to said foreclosure sale, but through error and mutual mistake said Substitute Trustee's Deed was filed for record."  The Rescission Document further stated that it was "executed and filed for record to purge such Real Property Records of all evidence of such foreclosure by Trustee's Sale including, without limitation, such Substitute Trustee's Deed to the same effect  as if such Substitute Trustee's Deed had not been filed for record."

The VA also attached the "Declaration of R. Biagioli" to its motion to dismiss.  Biagioli is a Loan Guaranty Officer with the VA's Regional Office in Houston, Texas.  The Declaration stated that the "Procedure for Default" for loans guaranteed under the VA Loan Guaranty Program is set out at 38 U.S.C. § 3722.  If the specified procedures are followed, the holder of the note may elect to convey the property to the Secretary of Veterans Affairs following foreclosure or other judicial disposition of the security.  *See* 38 C.F.R. § 36.4320.  Biagioli stated that the specified procedures at 38 C.F.R. § 36.4340(h) for conveyance to the Secretary have not been satisfied, and the Secretary has not accepted conveyance of the subject property and is not responsible for assessments against the subject property made by Ashley Place.  The VA argues that this case should be dismissed pursuant to Rule 12(b)(6) because the VA was never the record owner of the subject real property and Washington Mutual never validly conveyed the property to VA.

---

[6]This lawsuit was filed on November 14, 2006.

In response to the VA's Rule 12(b)(1) motion, Ashley Place argues that this Court has subject matter jurisdiction over this case pursuant to the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which gives federal district courts jurisdiction over claims against the United States not exceeding $10,000.00 for liquidated damages in cases not sounding in tort. Ashley Place stated that the jurisdictional citation in its Complaint contained a typographical error, and it seeks leave of the Court to amend its Complaint to correct this deficiency.

In response to the VA's Rule 12(b)(6) motion, Ashley Place argues that Defendant was record owner of the subject property at the time such assessments were levied, and this Court must accept such factual allegations as true for purposes of considering the VA's Rule 12(b)(6) motion. Ashley Place argues that Texas case law defines "record owner" of real property to be the "owner of title to the land, at the time of the notice, as disclosed by the public records of the county, which the law required to be kept." *Hunt v. State*, 217 S.W. 1034, 1035 (Tex. 1918). Ashley Place further argues that the person assessed need not have a perfect or unencumbered title to the land to make the assessment legal. *Childress County v. State*, 92 S.W.2d 1011, 1015 (Tex. 1936).

## II. Legal Analysis

**A.     Standard of review for motion to dismiss.**

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to pursue his complaint and offer evidence in support of his claims. *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996). The Court may not look beyond the pleadings in ruling on the motion. *Baker*, 75 F.3d at 196. Motions to dismiss are

-6-

disfavored and are rarely granted. *Beanal v. Freeport-McMoran*, *Inc.*, 197 F.3d 161, 164 (5th Cir.

1999). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *Id*. at 164 (quoting *Conley

v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, the Court does not accept conclusory allegations

or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns Corp*., 14 F.3d 1061, 1067

(5th Cir. 1994).

**B.     The Court ORDERS Plaintiff to submit additional briefing addressing the nature of
        its Little Tucker Act claim against Defendant.**

          The Little Tucker Act provides that a district court has jurisdiction over "[a]ny other civil

action or claim against the United States, not exceeding $10,000 in amount, founded either upon the

Constitution, or any Act of Congress, or any regulation of an executive department, or upon any

express or implied contract with the United States, or for liquidated or unliquidated damages in cases

not sounding in tort . . . ." 28 U.S.C. § 1346(a)(2). The Little Tucker Act is "a jurisdictional statute;

it does not create any substantive right enforceable against the United States for money damages."

*United States v. Testan*, 424 U.S. 392, 398 (1976). Thus, in order to for the court to have jurisdiction,

a plaintiff must identify and plead a separate contractual relationship, constitutional provision,

federal statute, and/or agency regulation that provides a substantive right to money damages. *Todd

v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). In addition to these substantive pleading

requirements, the complaint must allege that the claim comes within the $10,000 jurisdictional limit.

*See Bd. of Governors v. DLG Fin. Corp.*, 29 F.3d 993, 999 (5th Cir.1994).  The Court of Federal

Claims has exclusive jurisdiction over Tucker Act claims in excess of $10,000.  *See Awad v. U.S.*,

301 F.3d 1367, 1372 (Fed. Cir. 2002).  If the amount of the claim is below $10,000, the district court

has jurisdiction to entertain claims against the United States for breach of an express or implied-in-fact contract, but not for breach of an implied-in-law contract. *Army and Air Force Exchange Serv. v. Sheehan*, 456 U.S. 728, 738 n.10 (1982); *GAF Corp. v. United States*, 932 F.2d 947, 951 (Fed. Cir. 1991).

Plaintiff is ORDERED to submit additional briefing and an Amended Complaint addressing the nature of its Little Tucker Act claim against the United States. Specifically, Plaintiff must (1) identify the separate contractual relationship, constitutional provision, federal statute, and/or agency regulation that provides a substantive right to money damages and (2) allege that the claim falls within the $10,000 jurisdictional limit.

**B.      The Court ORDERS both parties to submit additional briefing concerning choice-of-law issues related to Plaintiff's Little Tucker Act claim.  Furthermore, the Court ORDERS both parties to submit additional briefing concerning whether the bankruptcy court retroactively validated the foreclosure sale that was conducted in violation of the automatic stay.**

The obligations to and rights of the United States under its contracts are governed exclusively by federal law. *Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988); *see Oswalt v. U.S.*, 41 Fed. Appx. 471, 473 (Fed. Cir. 2002) (stating elements of express and implied-in-fact contracts under the Tucker Act). However, state law controls over federal common law where "the litigation . . . raises no question regarding the liability of the United States or the responsibilities of the United States under the contracts." *Miree v. DeKalb County*, 433 U.S. 25, 28-29 (1977).

The filing of a bankruptcy petition results in the imposition of an automatic stay that prohibits creditors from taking certain actions against bankrupt debtors. *See* 11 U.S.C. § 362. The automatic stay serves, until further order of the bankruptcy court, as an absolute bar to the commencement or continuation of any judicial, administrative, or other proceeding against the debtor that was or could

have been commenced before the commencement of the bankruptcy case. *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 114 (5th Cir.1987).

"An action taken in violation of the automatic stay is void, not merely voidable." *Cont'l Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988). In Texas, a foreclosure sale that occurs during the automatic stay is void and passes no title. *Oles v. Curl*, 65 S.W.3d 129, 132 (Tex. App.–Amarillo 2001, no pet.); *Stephens v. Hemyari*, No. 05-05-01225-CV, 2007 WL 499644, *3 (Tex. App.–Dallas Feb. 16, 2007, no pet.); *Graham v. Pazos De La Torre*, 821 S.W.2d 162, 164 (Tex. App.–Corpus Christi 1991, writ denied).[7] A foreclosure sale conducted in violation of the automatic stay is void and passes no title even though the creditor initiating the sale did not have knowledge of the debtor's bankruptcy filing. *Oles*, 65 S.W.3d at 131-32 (citing *Graham*, 821 S.W.2d at 164). Furthermore, a foreclosure sale conducted in violation of the automatic stay is void and passes no title even if the debtor's petitioned for bankruptcy the day before the creditor foreclosed on the property. *See Oles*, 65 S.W.3d at 132 ("Here, it is undisputed that Oles petitioned for bankruptcy the day before the Curls foreclosed on the realty. Nothing of record indicates that the stay was lifted or annulled by judicial fiat or otherwise when the foreclosure occurred. Consequently, neither the Curls nor their substitute trustee could enforce their lien or deed of trust through

---

[7]The Court notes that there is a semantic debate in this area of law concerning the distinction between "void" and "voidable" actions. *See Oles v. Curl*, 65 S.W.3d at 132 n.1. The Fifth Circuit has held that actions taken in violation of the automatic stay are voidable, not void, because a bankruptcy court has the authority to retroactively validate a foreclosure sale that was conducted in violation of the automatic stay. *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989); *In re Cueva*, 371 F.3d 232, 236 (5th Cir. 2004). The Court suspects that this debate is irrelevant to the resolution of this case. In this case, Plaintiff did not allege that the bankruptcy court retroactively validated the foreclosure sale, and Texas law holds that a foreclosure sale conducted in violation of the automatic stay is void and does not pass title. If the substitute trustee's deed was void and never passed title to the subject property to the VA, then the Court suspects that the VA cannot be contractually liable for any assessments against that property.

foreclosure. 11 U.S.C. § 362(a)(4). Because they nonetheless attempted to do so, the foreclosure was void, and the Curls acquired no title to the property").

The Court suspects that the validity of this foreclosure sale should be evaluated under Texas law. In this case, the Debtors filed for chapter 13 bankruptcy on May 31, 2004, and the foreclosure sale occurred one day later, on June 1, 2004. Home mortgage foreclosures of VA-guaranteed loans are conducted by the note and lien holder in accordance with the laws of the state in which the property is located. 38 U.S.C. § 1820(a)(6); 38 C.F.R. §§ 36.4319, 36.4320; *Grant v. U.S. Dept. of Veterans' Affairs*, 827 F. Supp. 418, 421 (S.D. Tex. 1993). Plaintiff's claim against the VA under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), appears to sound in contract based on the VA's alleged ownership of the property in question. Although breach of contract claims under the Little Tucker Act are governed by federal law, the Court suspects that there is no contract to construe in this case because the substitute trustee's deed conveying ownership of the subject property to the VA was void under Texas law and passed no title. The validity of the foreclosure sale appears outcome-determinative because it dictates whether a contract existed *ab initio.*

Even assuming that the validity of the foreclosure sale should be evaluated under federal law, the Fifth Circuit recently held that a foreclosure in violation of the automatic stay is invalid unless the stay is retroactively annulled. *In re Cueva*, 371 F.3d 232, 237 (5th Cir. 2004); *In re Pierce*, 272 B.R. 198, 204 (Bankr. S.D. Tex. 2001). Assuming that federal law applied, Plaintiff "has no right to rely" on the validity of the substitute trustee's deed to support its breach of contract claim "until and unless it [the foreclosure sale] is validated by court action." *In re Cueva*, 371 F.3d at 237 (citing *Pierce*, 272 B.R. at 208). The bankruptcy case was filed on March 31, 2004, and Plaintiff has not alleged that the bankruptcy court retroactively validated the foreclosure sale. The Court also notes

that in *Cueva*, the Fifth Circuit cited approvingly to Texas Supreme Court precedent holding that foreclosure sales conducted in violation of the automatic stay are void.  *Id.* at 237 (citing *Cont'l Casing*, 751 S.W.3d at 501).

"The bankruptcy court may take some action, such as annulling the stay, to retroactively validate actions taken in violation of the stay." *Goswami v. Metropolitan Sav. and Loan Ass'n*, 751 S.W.2d 487, 489 (Tex.1988); *Huddleston v. Tex. Commerce Bank-Dallas, N.A.*, 756 S.W.2d 343, 345 (Tex. App.–Dallas 1988, writ denied). However, absent such an action by the bankruptcy court, an action that would have been initiated by appellees in this case, the mere termination of the stay does not validate actions taken in violation of it. *Huddleston*, 756 S.W.2d at 345-46; *In re Cueva*, 371 F.3d at 237.  Unless the bankruptcy court retroactively validated the foreclosure sale, it appears that the foreclosure sale was void and passed no title under both Texas and federal law.  A review of the Bankruptcy Court's docket sheet suggests that the Bankruptcy Court has never retroactively validated the foreclosure sale.  *See Casperone*, 819 F.2d at 114 (holding that the terms of an order modifying the automatic stay must be strictly construed).  However, in an abundance of caution, both parties are ORDERED to submit additional briefing concerning whether the validity of the foreclosure sale should be construed under Texas or federal law and whether the bankruptcy court retroactively validated the foreclosure sale.

**C.    The Court ORDERS both parties to submit additional briefing concerning whether the Rescission Document executed by the substitute trustee is void and whether this Court should issue an order correcting the chain of title.**

In its motion to dismiss, the VA relied extensively on the "Rescission of Substitute Trustee's Sale" ("Rescission Document") executed by the substitute trustee.  The Court questions the validity of the Rescission Document.  The power of the trustee to sell the deed for the parties is derived

wholly from the trust instrument. *Winters v. Slover*, 251 S.W.2d 726, 728 (1952). The trustee under

a deed of trust has limited authority to act as the mortgagor's agent only in the *sale* of the property.

*Bonilla v. Robertson*, 918 S.W.2d 17, 22 (Tex. App.–Corpus Christi 1996, no writ) (emphasis in

original). In *Bonilla*, the Corpus Christi Court of Appeals stated the following:

> Once a [non-judicial foreclosure] sale is complete, there is no further express or
> implied authority to act as the mortgagor's agent in the cancellation or rescission of
> a sale. A trustee does not have the power to execute a "Cancellation of Deed"
> purporting to take back title to the property and resurrect the underlying debt. To
> imply a power in the trustee to nullify a sale after the sale is complete and the
> trustee's deed has been executed, delivered, and filed, would be to give the trustee
> powers never specified or contemplated by the deed of trust.

*Id.* In this case, the VA has not established that the deed of trust gave the substitute trustee the

authority to execute the Rescission Document more than two years after the substitute trustee's sale

occurred. The Court ORDERS both parties to submit additional briefing concerning whether the

Rescission Document executed by the substitute trustee is void and whether this Court should issue

an order correcting the chain of title.

**D.    The Court ORDERS both parties to submit additional briefing concerning whether
Washington Mutual's failure to comply with 38 C.F.R. § 36.4320 rendered the
attempted conveyance a nullity.**

The Court questions whether Washington Mutual's failure to comply with 38 C.F.R. §

36.4320 rendered the attempted conveyance a nullity. The VA's motion to dismiss was based

primarily on the Rescission Document, and the VA cited to section 36.4320(h) without any further

analysis. The Court will not rely on Washington Mutual's alleged non-compliance with 38 C.F.R.

§ 36.4320 to dismiss this case absent submission of further evidence and briefing by the parties.

### III. Conclusion

The Court finds that further briefing is necessary to resolve Defendant's motion to dismiss.

The Court ORDERS the parties to submit additional briefing on the following issues: (1) Plaintiff must allege the exact nature of its Little Tucker Act claim against Defendant; (2) both parties must address choice-of-law issues related to Plaintiff's Little Tucker Act claim; (3) both parties must address whether the Bankruptcy Court retroactively validated the foreclosure sale that was conducted in violation of the automatic stay; (4) both parties must address whether the Rescission Document executed by the substitute trustee is void; (5) both parties must address whether this Court should issue an Order correcting the chain of title; and (6) both parties must address whether Washington Mutual's failure to comply with 38 C.F.R. § 36.4320 rendered the attempted conveyance a nullity. Both parties are ORDERED to file this briefing by **April 17, 2007**, and both parties may file a response by **April 30, 2007.** The brief and the response are limited to fifteen (15) pages in length. No reply will be allowed. Plaintiff is ORDERED to file an Amended Complaint on or before **April 10, 2007.**

The Court opts to convert this motion to dismiss into a motion for summary judgment. In order to prevent unfair surprise, the parties are given notice that they may present summary judgment evidence in their briefing.

It is so ORDERED.

SIGNED this 3rd day of April, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE